IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 20-CR-004-GKF |
| ELISA KAYE SANDERS, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Quash the Search and Seizure and Suppress All Evidence Obtained Therefrom [Doc. 34] of defendant Elisa Kaye Sanders. For the reasons discussed below, the motion is denied in part, and the court defers ruling in part pending the evidentiary hearing to be conducted on June 9, 2020 at 1:30 p.m.

**Search Warrant**

On May 8, 2018, the government applied for a warrant to search the premises known as L'Chaim Medical Spa, located at 6616 S. Memorial Drive, Tulsa, Oklahoma, 74133 (Spa), related to alleged violations of 21 U.S.C. §§ 331(c), (k). [Doc. 34-1, pp. 42-71]. The application was assigned case number 18-MJ-63-PJC. Special Agent for the Food & Drug Administration's Office of Criminal Investigations Jeremy Bain swore to and signed the application and Affidavit in Support of Search Warrant (Affidavit) before U.S. Magistrate Judge Paul J. Cleary, who issued the warrant that day. [*Id.* at pp. 2-8]. The Affidavit avers that Ms. Sanders owned the Spa. [*Id.* at p. 48]. On May 15, 2018, the FDA Office of Criminal Investigations searched the Spa. [*Id.* at pp. 9-41].

**Procedural History**

On January 14, 2020, the grand jury returned an Indictment against Ms. Sanders [Doc. 2],

which was superseded on June 1, 2020. [Doc. 55]. The Superseding Indictment charges Ms. Sanders with two counts of mail fraud under 18 U.S.C. § 1341, and thirteen counts of wire fraud under § 1343. Specifically, the Superseding Indictment charges:

> From at least in or about November of 2012, a more exact date being unknown to the Grand Jury, to on or about April 1, 2018, in the Northern District of Oklahoma and elsewhere, the defendant, ELISA KAYE SANDERS, knowingly devised, and intended to devise, a scheme and artifice to defraud clients seeking treatment from a spa owned in part, and operated by, SANDERS, staff associated with her spa, and the state and federal regulatory agencies responsible for the oversight of her spa's activities; and to obtain money from her spa's clients by means of materially false and fraudulent pretenses, representations, and promises; and by intentional concealment and omissions of material facts, as described below ("the Scheme"):

[Doc. 55, p. 1]. According to the Superseding Indictment, "[t]he purpose of the Scheme was to enrich SANDERS by obtaining money from clients; to use those funds to operate her spa; to support SANDERS' lifestyle; and to conceal from the clients, staff associated with the spa, and the federal and state regulatory agencies responsible for the oversight of the spa's activities, the truth about the source and prescribing of prescription drugs and devices offered by SANDERS." [*Id.* ¶ 1].

Ms. Sanders moved to suppress all evidence obtained during the search and seizure of the Spa for six stated reasons, which may be fairly be summarized in three general categories: (1) the Affidavit contains insufficient facts from which the Magistrate Judge could determine probable cause existed; (2) the warrant is a general warrant and is not sufficiently particular; and (3) agents conducting the search exceeded the scope of the warrant. [Doc. 34]. Eight days later, Ms. Sanders requested an evidentiary hearing on the motion to suppress, specifically to examine Bain and "establish the information he had prior to serving the search warrant and the evidence he obtained from the items seized in the warrant." [Doc. 37, p. 1]. Ms. Sanders states "[i]t is believed it will be obvious from [Bain's] testimony that he never had probable cause to believe there was evidence

of crimes or criminal activity in the 1,250+ patient files and virtually every single business record and computer hard drive seized from the medical spa." [*Id.*].

The court granted Ms. Sanders's request for evidentiary hearing based upon its general practice of hearing all pending motions during the pretrial conference. [Doc. 39]. The government subsequently filed a written response in opposition to the motion to suppress, wherein it asked the court to reconsider its order granting the requested evidentiary hearing. [Doc. 46, pp. 26-27]. The court therefore first addresses the necessity for, and scope of, an evidentiary hearing.

### Evidentiary Hearing

Significantly, Ms. Sanders does not argue that a hearing is *required* pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1] *See generally* [Doc. 34; Doc. 37]. However, as recognized by now Supreme Court Justice Gorsuch, what is not mandatory, may still be permissible, and this court possesses discretion in choosing its pretrial procedures, "including whether to take the matter on the briefs, hear oral argument, or hold an evidentiary hearing." *United States v. Herrera*, 782 F.3d 571, 573-74 (10th Cir. 2015).

The court has reviewed the briefs and supporting documents submitted by the parties and concludes that the existence of probable cause and the particularity requirement may be resolved on the basis of the briefs and without oral argument or an evidentiary hearing. Thus, this order resolves Ms. Sanders's arguments with respect to those issues. However, this order does not address Ms. Sanders's contention that the executing agents exceeded the scope of the warrant. *See infra,* p. 14.

---

[1] To mandate a hearing under *Franks*, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. Ms. Sanders fails to make the requisite substantial showing.

**Probable Cause**

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. With respect to probable cause, the U.S. Supreme Court has stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 238-39 (1983); *see also United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) (quoting *United States v. Simpson*, 152 F.3d 1241, 1246 (10th Cir. 1998)) ("In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"). To make the determination, the magistrate judge "may draw reasonable inferences from the material provided in the warrant application." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (quoting *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998)). Ms. Sanders challenges the existence of probable cause for four (4) general reasons.

*First,* Ms. Sanders argues that the Affidavit provides no factual basis for a conclusion that Botox and Juvederm were "misbranded" pursuant to 21 U.S.C. § 331. Section 331 states in relevant part:

> [T]he following acts and the causing thereof are prohibited:

>   (c)   The receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or *misbranded*, and the delivery or proffered delivery thereof for pay or otherwise.
>
>   \*\*\*
>
>   (k)   The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, tobacco product, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or *misbranded*.

21 U.S.C. § 331(c), (k) (emphasis added).

Botox is a prescription drug and, as such, "shall be dispensed only . . . upon a written prescription of a practitioner licensed by law to administer such drug." 21 U.S.C. § 353(b)(1). Pursuant to § 353(b)(1) "[t]he act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale." *Id.*

Juvederm is a prescription device. *See* 21 U.S.C. § 321(h)(2), (3); 21 C.F.R. § 801.109 ("A device which, because of any potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use is not safe except under the supervision of a practitioner licensed by law to direct the use of such device, and hence for which 'adequate directions for use' cannot be prepared."). A prescription device is "misbranded" if it does not bear "adequate directions for use." 21 U.S.C. § 352(f). "Adequate directions for use means directions under which the layman can use a device safely and for the purposes for which it is intended." 21 C.F.R. § 801.5. Thus, because prescription devices require the supervision of a practitioner licensed by law to direct the use of such device, prescription devices are presumptively misbranded. *See United States v. An Article of Device*, 731 F.2d 1253, 1261 (7th Cir. 1984).

Pursuant to these statutes and regulations, prescription drugs and devices are "misbranded"

when they are not dispensed by a practitioner authorized by law in the manner prescribed by the statutes. 21 U.S.C. § 353(b)(1); *An Article of Device*, 731 F.2d at 1261.[2] Here, the Affidavit states that Ms. Sanders lost her nursing license in 2016 as a result of her treating patients without the requisite involvement of a medical professional. Additionally, the Affidavit details complaints and patient interviews indicating that Ms. Sanders administered prescription drugs or devices to at least eight separate patients, without physician supervision, during 2017 to 2018. [Doc. 34-1, pp. 59-64]. Based on this evidence, a substantial basis existed for Magistrate Judge Cleary's conclusion that there was a fair probability that evidence of "misbranding" would be found at the Spa so as to establish probable cause.

*Second,* Ms. Sanders argues for suppression because the warrant sought evidence of violations of 21 U.S.C. § 331, but she has not been charged under that statute. However, it is well-established that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).

*Third,* Ms. Sanders argues that the facts included in the Affidavit were stale and therefore insufficient to establish probable cause. "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir. 2004) (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)). "'[O]ngoing and continuous activity makes the passage of time less critical' when judging the staleness of information upon which a

---

[2] Ms. Sanders's motion is primarily directed to argument that insufficient evidence existed of "mislabeling." However, mislabeling is but one means through which an item may be "misbranded."

search warrant is based." *Id.*

Ms. Sanders relies heavily on the Affidavit's assertion that a January 26, 2015 trash pull recovered evidence of Botox and Juvederm that was not approved for distribution within the United States. However, as previously stated, the Affidavit also includes evidence that Ms. Sanders, after revocation of her nursing license, administered injections of prescription drugs and devices to patients without supervision from March of 2017 to February 9, 2018. The warrant was issued on May 8, 2018—three months after the last date alleged in the Affidavit. The majority of the records sought were business records. "It is eminently reasonable to expect that such records would be maintained in th[e] office[] for a period of time and surely as long as . . . three months." *Andersen v. Maryland*, 427 U.S. 463, 478 n.9 (1976).

*Fourth,* Ms. Sanders argues that the Affidavit omitted exculpatory evidence, specifically that: (1) FDA agents conducted trash pulls on January 26, 2018 and February 9, 2018, and the products found were legitimate, and (2) that an unidentified state medical board only noted use of prescription drugs by Sanders without physician supervision through July 16, 2014. Pursuant to *Franks,* "a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *Herrera*, 782 F.3d at 573 (citing *Franks*, 438 U.S. at 155-56); *see also United States v. McKissick,* 204 F.3d 1282, 1297 (10th Cir. 2000) ("The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."). However, "*Franks* does not extend to immaterial omissions." *Stewart v. Donges,* 915 F.2d 572, 583 (10th Cir. 1990). "To determine materiality, we assess whether probable cause would exist if omitted facts were included and misstatements were removed from the affidavit." *United States v. Hopson*, 643 F. App'x 694, 696 (10th Cir.

2016) (unpublished)[3]; *Herrera*, 782 F.3d at 575 (where "intentional, knowing, or reckless omissions" are alleged, "[the] court must add in the omitted facts and assess the affidavit in that light").

Even inclusive of the omitted facts, given the totality of circumstances, a fair probability existed that evidence of "misbranding" in violation of 21 U.S.C. § 331 would be found at the Spa. Ms. Sanders provides the court a single record—purportedly from an investigation conducted by a medical board—documenting treatments from July 2, 2013 through July 16, 2014 administered by her without face-to-face assessment of the patient by a physician and/or physician order. However, the record does not vitiate evidence presented through at least eight (8) patient interviews that they received treatment from Sanders without physician supervision in 2017 and 2018. [Doc. 34-1, pp. 60-64]. Further, evidence of legitimate products found in the January and February 2018 trash pulls does not preclude a conclusion that items found in the trash were *misbranded* by virtue of administration by Ms. Sanders without physician supervision/order. [*Id.* at pp. 62-64]. For the foregoing reasons, probable cause existed even if the omitted facts are included in the Affidavit, and no constitutional violation occurred. Ms. Sanders's motion to suppress, insofar as it is premised on a lack of probable cause, is denied.

## Particularity

As previously stated, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched, and the persons or things to be*

---

[3] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

*seized*." U.S. Const. amend. IV (emphasis added). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard,* 774 F.2d 402, 404 (10th Cir. 1985). The Tenth Circuit applies a "practical" test to determine if a description of items to be seized is sufficiently particular. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* (quoting *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982)).

As a general rule, reviewing courts "should interpret warrants in a commonsense and realistic fashion, rather than a hypertechnical manner." *United States v. Sells*, 463 F.3d 1148, 1156 (10th Cir. 2006) (internal quotation marks omitted). In addition, "whether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated." *United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011). "Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) (quoting *Leary*, 846 F.2d at 600).

To identify the person or describe the property to be seized, the warrant refers to "Attachment B." [Doc. 34-1, p. 2]. "Attachment B" is prefaced with the following statement: "The following items, which constitute evidence, fruits, and instrumentalities of violations of federal law, including but not limited to violations of 21 U.S.C. § 331 for the receipt and distribution of misbranded drugs and devices." [Doc. 34-1, p. 5]. Attachment B then sets forth fifteen (15) separate categories of property, two of which include various sub-categories.[4] [*Id.* at

---

[4] Attachment B includes two categories designated as category no. 13. [Doc. 34-1, pp. 6-7].

pp. 5-8].

The government urges the court to interpret the preface of Attachment B as limiting all separate categories of property set forth below as being limited to evidence of the receipt and distribution of misbranded drugs and devices, including in violation of 21 U.S.C. § 331. Thus, the government argues that the warrant is sufficiently particular because it is limited in scope to evidence of a specific federal crime. *United States v. Christie*, 717 F.3d 1156, 1165-66 (10th Cir. 2013); *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011).

However, interpreting Attachment B in a commonsense fashion, the warrant is not so limited. Rather, the warrant permits seizure of *any* "evidence, fruits, and instrumentalities of violations of federal law," which includes, *but is not limited to*, violations of 21 U.S.C. § 331 for the receipt and distribution of misbranded drugs and devices. Further, eight (8) of the fifteen (15) categories are not specifically limited to evidence of misbranded drugs or devices. Thus, the warrant is not limited to evidence of any particular crime and is therefore facially overbroad. *See Cassady v. Goering*, 567 F.3d 628, 635 (10th Cir. 2009) (quoting *Voss,* 774 F.2d at 405) ("[T]he warrant did not confine the scope of the search to any particular crime . . . . Consequently, '[t]he warrant[] allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, the fourth amendment proscribes.'").

### Good Faith Exception to the Exclusionary Rule

Although the warrant is facially invalid, suppression does not necessarily follow.[5] "Even if a warrant fails to satisfy the Fourth Amendment's particularity requirement, the exclusionary

---

[5] Although this order does not include an extensive discussion of the particularity requirement, the court may decide the issue based upon application of the good faith exception. *See United States v. De La Torre,* 543 F. App'x 827, 829 (10th Cir. 2013) (unpublished) (collecting cases).

rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).[6]  Importantly, "the exclusionary rule is not an individual right." *Herring v. United States*, 555 U.S. 135, 141 (2009).  The rule's purpose is to deter police misconduct, and "the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule." *Riccardi*, 405 F.3d at 863 (citing *Leon*, 468 U.S. at 918).  The rule applies only where it results in appreciable deterrence, and "the benefits of deterrence must outweigh the costs." *Herring*, 555 U.S. at 141.

In the Tenth Circuit, "a suppression court's assessment of an officer's good faith is confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant, as well as information relating to the warrant application process." *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018).  "Reliance upon a warrant issued by a neutral magistrate creates a 'presumption . . . [that] the officer is acting in good faith.'" *Chambers,* 882 F.3d at 1310 (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)).  For four reasons, the court

---

[6] As previously stated, Ms. Sanders also argues that the warrant was not supported by probable cause.  "Under the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief." *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (quoting *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015)).  For the reasons discussed above, the warrant was supported by probable cause and therefore was not "devoid of factual support."  *See id.* ("An affidavit lacks indicia of probable cause when it does not contain factual support.").  Thus, the good faith exception would apply even if the Affidavit failed to establish probable cause.  *See United States v. Sanchez*, No. CR-18-245-D, 2019 WL 113780, at **6-7 (W.D. Okla. Jan. 4, 2019).

concludes that the officer's reliance on the warrant was objectively reasonable.

*First,* but for the omission of a comma, the government's interpretation of Attachment B would be entirely reasonable. As previously stated, the government argues that the prefatory language of Attachment B limits all the separate categories of property to evidence of the receipt and distribution of misbranded drugs and devices, including violations of 21 U.S.C. § 331. Had the warrant included a second comma after § 331—that is, stated, "The following items, which constitute evidence, fruits, and instrumentalities of violations of federal law, including but not limited to violations of 21 U.S.C. § 331**[,]** for the receipt and distribution of misbranded drugs and devices"—a common sense interpretation of the warrant would limit the items to be seized to evidence of violations of federal law for the receipt and distribution of misbranded drugs and devices, *including* violations of 21 U.S.C. § 331. Although the actual drafting did not accomplish the limitation, "one can see how a reasonable officer might have thought that the limitations in the [prefatory] portion of Attachment B would be read to also apply to the" categories set forth below. *See United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009).

*Second*, the prefatory language of Attachment B refers to violations of "21 U.S.C. § 331 for the receipt and distribution of misbranded drugs and devices," and seven (7) of the categories of evidence that follow are limited to evidence pertaining to "misbranded drugs or devices." [Doc. 34-1, pp. 44-46]. The Tenth Circuit has previously held that references to specific types of material or statutes are constitutionally sufficient. *See Christie,* 717 F.3d at 1165 (collecting cases). Further, Agent Bain, who executed the application and Affidavit and conducted the search, limited the Affidavit to probable cause of violations of §§ 331(c) and (k). *Russian*, 848 F.3d at 1246; *Otero*, 563 F.3d at 1135. Based on the multiple references to "misbranded drugs and devices" and § 331 included in Attachment B, as well as the technical failure of one comma in the prefatory language,

the court concludes that a reasonable officer would not have recognized that the warrant lacked sufficient particularity.[7]

*Third*, in addition to signing the warrant itself, the magistrate judge signed the warrant application and the affidavit. [Doc. 34-1, pp.42, 71]. "The magistrate judge's approval of the application and affidavit . . . further supports the objective reasonableness of [the agents'] reliance on the warrant." *Russian*, 848 F.3d at 1247. This is particularly true in this case where the omission of a comma significantly altered the scope of the warrant. "In the ordinary case, an officer cannot be expected to question the magistrate's . . . judgment that the form of the warrant is technically sufficient. [O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Leon*, 468 U.S. at 921 (quotation and citation omitted).

*Fourth* and finally, exclusion would not further the underlying purpose of the exclusionary rule, as any abuse was not of the deliberate or flagrant nature that the rule was designed to deter. *See Herring*, 555 U.S. at 143-44. The Supreme Court has explained:

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.

*Davis v. United States*, 564 U.S. 229, 238 (2011) (internal quotation marks and citations omitted). Here, the court concludes that the agents acted with an objectively reasonable good-faith belief

---

[7] Ms. Sanders urges the court to apply an unpublished decision of two panel judges to conclude that the good faith exception does not apply. *See United States v. Dunn*, 719 F. App'x 746 (10th Cir. 2017). The court declines to do so. *Dunn* is not persuasive as, in that case, the warrant was prefaced with a catch all phrase that indicated that the items to be searched "include[d] but are not limited to" the listed items. *Dunn,* 719 F. App'x at 748. Here, in contrast, the phrase referenced "violations of federal law, including but not limited to violations of 21 U.S.C. § 331." Thus, unlike in *Dunn*, the language did not expand the scope of the items to be searched. Additionally, as an unpublished decision, the opinion is not precedential. 10th Cir. R. 32.1(A).

that their conduct was lawful, and, at most, their conduct merely rises to simple, isolated negligence.

The court therefore concludes that the good faith exception to the exclusionary rule applies to prohibit exclusion based on the warrant's lack of particularity. However, the Tenth Circuit has held that "[t]he *Leon* good faith exception will not save an improperly executed warranted." *United States v. Angelos*, 433 F.3d 738, 746 (10th Cir. 2006) (quoting *United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998)).

To determine whether the executing agents exceeded the scope of the warrant, the court concludes that it would benefit from the presentation of additional evidence. Thus, the court will conduct an evidentiary hearing on June 9, 2020 at 1:30 p.m. With respect to Ms. Sanders's motion to suppress, the hearing is limited in scope to the discrete issue of whether executing officers exceeded the scope of the warrant. The court need not entertain argument or evidence regarding the issues decided above, including whether the Affidavit was sufficient to establish probable cause, the particularity of the warrant, or application of the *Leon* good faith exception. Should the court also wish to entertain evidence or argument regarding any other motion *in limine* that remains pending at the time of the hearing, the court will enter a separate minute order advising counsel in advance. Otherwise, counsel need not be prepared to present evidence or argument regarding any other pending motion.

## Conclusion

WHEREFORE, the Motion to Quash the Search and Seizure and Suppress All Evidence Obtained Therefrom [Doc. 34] of defendant Elisa Kaye Sanders is denied in part and deferred in part pending the evidentiary hearing to be conducted on June 9, 2020 at 1:30 p.m.

IT IS SO ORDERED this 4th day of June, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE